

X FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON

AUGUST 07, 2025

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ /s/ RJDG _____ DEPUTY

RYNE M. SEETO
6300 Morning Glen Cir
Las Vegas, Nevada 89108
Phone: (702) 328-8341
Ryne.seeto@gmail.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| RYNE M. SEETO,<br><br>      Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT,<br>JOHN DOE OFFICERS 1-5 (NHP Officers, in their individual capacities),<br>JOHN DOE OFFICERS 6-10 (LVMPD Officers, in their individual capacities),<br>JAMES DZURENDA, in his official capacity as Director of the Nevada Department of Public Safety (for injunctive relief only),<br><br>      Defendant. | Case No. 2:25-cv-00519-CDS-NJK<br><br>FIRST AMENDED COMPLAINT |

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 for violations of Plaintiff's federal constitutional rights. This Court also has jurisdiction under 28 U.S.C. § 1343 for civil rights claims.

2. Venue is proper in this District under 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred in Clark County, Nevada, within this judicial district.

## II. PARTIES

3. Plaintiff Ryne M. Seeto (also known as Michael Ryne Seeto in certain records) is a resident of Las Vegas, Nevada.

1

4. Defendant Las Vegas Metropolitan Police Department (LVMPD) is a municipal entity organized under the laws of Nevada, capable of being sued under 42 U.S.C. § 1983.

5. Defendants John Doe Officers 1-5 are individual officers employed by the Nevada Highway Patrol (NHP) at the time of the events, sued in their individual capacities for damages and official capacities for injunctive relief. Their true names are unknown to Plaintiff at this time and will be substituted upon discovery.

6. Defendants John Doe Officers 6-10 are individual officers employed by LVMPD at the time of the events, sued in their individual capacities for damages and official capacities for injunctive relief. Their true names are unknown to Plaintiff at this time and will be substituted upon discovery

7. Defendant James Dzurenda is the Director of the Nevada Department of Public Safety (which oversees NHP), sued in his official capacity solely for prospective injunctive relief under the Ex parte Young doctrine.

8. All individual Defendants acted under color of state law during the relevant events.

## III. FACTUAL ALLEGATIONS

9. On or about August 18, 2024, at approximately 22:22 hours near Rampart Boulevard and Summerlin Parkway in Las Vegas, Nevada, Plaintiff was a passenger in a vehicle en route to the airport for a flight to Washington, D.C., to attend a federal hearing. The vehicle had an expired temporary registration due to egregious delays in title issuance, which Plaintiff immediately and fully explained to the Doe Officers upon the initial stop.

10. The driver, a retied USAF Major and pilot, was threatened with arrest if he did not submit to a field sobriety test due to an alleged "smell of alcohol." The driver

2

communicated that he is 100% disabled and is unable to perform a field sobriety test. He was arrested.

11. In a desperate attempt to avoid the unjust towing of his vehicle based on baseless allegations of intoxication, Plaintiff demanded a breathalyzer test himself and blew a 0.03 after declaring that he had just rinsed his mouth as he was on the way to the airport. The officers arrogantly dismissed this, insisting he needed to blow an impossible "0.000." At one point, an officer falsely accused Plaintiff of being on drugs because his pupils were dilated, despite the fact that it was nighttime on a dark highway with minimal lighting—conditions under which the officers' own pupils were similarly dilated. Despite this irrefutable evidence of sobriety and Plaintiff's urgent warnings about missing the critical flight, the Doe Officers maliciously insisted on towing the vehicle, deliberately rejecting reasonable offers for family retrieval or other viable alternatives, as if hell-bent on inflicting maximum harm and disruption. This reckless conduct utterly destroyed Plaintiff's travel plans and escalated the encounter unnecessarily.

12. The Doe Officers transported other passengers away but callously abandoned Plaintiff on the highway. Plaintiff lounged on the C-block shoulder for approximately 45 minutes, surrounded by officers who relentlessly attempted to force their unwanted "help" upon him because he refused to sacrifice his freedom and dignity by agreeing to be confined in the back of a patrol car. Plaintiff conditionally agreed to a ride only if treated as an equal in the front seat. Eventually, the sergeant, after towing the vehicle despite the 0.03 breathalyzer that Plaintiff had requested, accosted Plaintiff, demanding to know his next plans. Plaintiff defiantly replied, "The Nevada Highway Patrol just stole my truck! Can I get a receipt for that?" The Doe Officers had to "help" someone else and dispersed.

3

13. While walking home in the dark, Plaintiff discovered a small cylindrical container (smaller than an AA battery) on the ground and picked it up without examining it, as he was actively on the phone rebooking his flight disrupted by the officers' actions.

14. The same Doe Officers aggressively approached Plaintiff, deceitfully offering a ride while demanding an unwarranted pat-down, which he lawfully refused. They then viciously tackled him without any semblance of probable cause, handcuffed him brutally, and conducted an illegal search, discovering the container (later falsely alleged to contain a white powdery substance) and his wallet. The officers sadistically mocked Plaintiff's truthful explanation that he had found the container on the highway solely because of their prior towing, demonstrating blatant disregard for facts and truth, as if contriving.

15. The Doe Officers inflicted gratuitous excessive force: savagely cutting Plaintiff's pants with a knife while he remained handcuffed, causing them to drop to his ankles and exposing him to degrading public humiliation in front of over 50 persons (including officers, detainees, and bystanders). The officers cruelly yelled at him to pull up his pants despite the handcuffs restricting his movement and continued their derisive mockery, compounding the intentional infliction of emotional distress.

16. Plaintiff was forcibly transported to a detention facility and unlawfully detained for approximately 12 hours as a pretrial detainee. He was deliberately kept ignorant of any charges, denied access to a phone call or counsel in violation of basic rights, coerced into providing a DNA sample under extreme duress (as a non-negotiable condition for release), and repeatedly denied water despite his desperate pleas citing severe dehydration from walking in the desert heat and the necessity for hydration to cooperate. This willful deprivation triggered intense distress, profound humiliation, and an acute anxiety attack during intake, where officers violently

4

threw him into a chair and menacingly threatened even harsher treatment for perceived non-cooperation. He was unjustly confined in the "drunk tank" despite proven sobriety, further evidencing the officers' vindictive motives. While detained, officers mocked Plaintiff by presenting him with a Monopoly "Get Out of Jail Free" card, ruining a perfectly good game of Monopoly in a sadistic display of contempt. Plaintiff was explicitly told that he had "pissed off" the night shift and that they would keep him in the drunk tank until the night shift returned, prolonging his suffering out of sheer spite.

17. No valid probable cause ever existed; the arrest arose purely from Plaintiff's rightful refusal of unwanted "assistance" and his lawful assertion of constitutional rights. Baseless charges were filed on August 19, 2024 (Case No. 24-PC-0706117 in Clark County Justice Court, Case Type: Felony CR) for possession of a Schedule I or II controlled substance less than 14 grams, first or second offense, along with related accusations (false statement to obstruct officer and intoxicated pedestrian on road). These fabricated charges lack any foundation, as the container was innocently found on the highway post-towing and was not knowingly possessed. As a condition of release, Plaintiff was forced to agree—under explicit threat of an arrest warrant—to appear before the court at a later date. At this initial appearance, the district attorney callously requested a continuance, Plaintiff was never acknowledged or given an opportunity to speak, and he was burdened with the ongoing atrocity of these events for another 90 days, reflecting a complete and utter disregard for human dignity and accountability. At the second hearing, the district attorney failed to prosecute, denying Plaintiff his day in court and forcing him to suffer needlessly for nothing.

18. Body camera footage obtained from Defendants is conspicuously and suspiciously incomplete, omitting critical portions of the incident—including key interactions during the initial stop, the towing decision, the arrest, and detention—despite

5

departmental policies mandating full preservation. This glaring incompleteness strongly suggests deliberate spoliation of evidence and bad faith conduct, warranting an adverse inference against Defendants and further corroborating the unconstitutional nature of their actions, as recognized in cases like Wall v. Rasnick (selective destruction of footage violating policy supports bad faith).

19. The available bodycam footage reveals that Plaintiff was safely walking down the untraveled portion of the highway, talking on the phone rebooking his flight, when multiple patrol cars pulled up behind him. The officers immediately donned gloves and pursued Plaintiff, who was on the phone rebooking his missed flight. The officers made him hang up and demanded that he submit and get in the back of the patrol car; it was never discussed where he would be taken. Plaintiff, in distress over missing his hearing in Washington, D.C., agreed. Then the officers lunged at him, and Plaintiff jumped back, declaring "do not touch me." The officers then demanded that he lift up his shirt; Plaintiff complied. Now walking to the patrol car, Plaintiff reiterated "I am not getting in the back." To which the officers stated "You're not getting in the front." Plaintiff turned around and said: "then I do not need your help. What are you going to do, arrest me for walking home after towing my truck?" The officers pursued and backed Plaintiff into the median. Initially standing his ground, Plaintiff calmly asked "Am I being detained, sir?" The officer said "Yes." Plaintiff began to turn, and 0.5 seconds later "Now you're under arrest for pedestrian on the highway!" And multiple officers tackled him.

20. The police report (Event No. 240801204) filed by the arresting officers contains numerous glaring inconsistencies and evidences profound wrongfulness, further underscoring the baseless and malicious nature of the arrest. For instance, the report implies intoxication and obstruction without mentioning Plaintiff's demanded breathalyzer result of 0.03 (dismissed as needing "0.000"), the normal pupil dilation

6

in dark conditions, or Plaintiff's truthful explanations about finding the container on the highway post-towing. These omissions contradict irrefutable facts and suggest fabrication to justify charges under NRS 484B.297 (intoxicated pedestrian) and NRS 197.190 (false statement/obstruction), as no actual impairment or falsehood existed—Plaintiff's refusals were lawful assertions of rights, not hindrance. The report's selective narrative fails to address the absence of probable cause, such as Plaintiff's safe walking on the untraveled shoulder (not "traveled portion") and compliance (e.g., lifting shirt), while implying escalation by Plaintiff, which bodycam disproves. This wrongful fabrication violates NRS 197.130 (false reporting by officers) and supports § 1983 claims for false arrest, as Nevada courts suppress evidence from inconsistent reports.

21. As a direct result of this malicious arrest, erroneous entries in background check systems (e.g., NICS) flagrantly flagged Plaintiff with "felony information or indictment" based on the sham pending charge. On December 19, 2024, Plaintiff was wrongfully denied a firearm purchase under 18 U.S.C. § 922. Despite initiating a formal appeal by mailing fingerprints to the FBI CJIS Division as required, no correction or resolution has been forthcoming, perpetuating the deprivation of his rights.

22. On January 23, 2025, Plaintiff sent a demand letter via Certified Mail to NHP and LVMPD, explicitly demanding compensation ($100,000 in compensatory damages and $300,000 in punitive damages) along with immediate record corrections. The agencies contemptuously ignored this formal notice, exhibiting utter disdain for accountability.

23. These egregious violations were directly caused by NHP and LVMPD's entrenched policies, customs, or deliberate failures to train and supervise officers, including grossly inadequate training on establishing probable cause, towing procedures

7

without considering alternatives, ensuring database accuracy, and humane treatment of detainees. This systemic pattern of misconduct is starkly evidenced by numerous prior lawsuits, such as Uwah v. LVMPD (successful Monell claims for false arrests) and Stubbs v. LVMPD (Monell liability for false arrest and policy failures). Such policies served as the moving force behind the constitutional deprivations, as established in Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

## IV. CLAIMS

**Count I**: False Imprisonment under 42 U.S.C. § 1983 (Against All Individual Doe Defendants)

22. The Doe Officers maliciously and recklessly deprived Plaintiff of his liberty without any probable cause by arresting and detaining him for 12 hours, in blatant violation of the Fourth Amendment. See Wallace v. Kato, 549 U.S. 384 (2007); Thompson v. Clark, 596 U.S. 36 (2022).

**Count II**: Violation of Fourth Amendment Rights - Unlawful Seizure and Excessive Force (Against All Individual Doe Defendants)

23. The Doe Officers unlawfully and viciously seized Plaintiff's person, vehicle, and property without probable cause or warrant, and inflicted gratuitous excessive force (e.g., tackling and pants cutting), in flagrant violation of the Fourth Amendment. See Graham v. Connor, 490 U.S. 386 (1989).

**Count III**: Violation of Fourteenth Amendment Due Process Rights (Against All Individual Doe Defendants)

24. The Doe Officers deliberately deprived Plaintiff of his liberty without due process by detaining him without charges, counsel, or oversight; coercing DNA collection; and denying basic necessities, in shocking contravention of the Fourteenth Amendment. See

8

Manuel v. City of Joliet, 580 U.S. 357 (2017); Kingsley v. Hendrickson, 576 U.S. 389 (2015).

**Count IV**: Violation of Eighth and Fourteenth Amendment Rights - Conditions of Confinement (Against All Individual Doe Defendants)

25. The barbaric conditions of detention, including willful denial of water, public humiliation, and menacing threats, constituted cruel and unusual punishment and failed any test of objective reasonableness, in egregious violation of the Eighth and Fourteenth Amendments. See Kingsley v. Hendrickson, 576 U.S. 389 (2015); Bell v. Wolfish, 441 U.S. 520 (1979).

**Count V**: Violation of Second Amendment Rights (Against All Defendants)

26. The fabricated database flags stemming from this vindictive arrest have unjustly and effectively denied Plaintiff his fundamental right to bear arms under 18 U.S.C. § 922 as of December 19, 2024, without any conviction or legitimate justification, in direct violation of the Second Amendment. See New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022); Snyder v. United States (challenging erroneous NICS denials).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

A. Compensatory damages for the severe physical, emotional, and reputational harm inflicted.

B. Punitive damages to punish their willful and malicious conduct.

C. Declaratory judgment affirming that Defendants' actions were patently unlawful.

D. Injunctive relief against all Defendants to immediately correct the false database entries and fully restore Plaintiff's rights.

E. Costs and fees under 42 U.S.C. § 1988.

F. Such other and further relief as the Court deems just and proper.

DATED: August 07, 2025

/s/ Ryne M. Seeto
Ryne M. Seeto
Pro Se Plaintiff
6300 Morning Glen Cir
Las Vegas, NV 89108
702-328-8341
ryne.seeto@gmail.com

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Ryne M. Seeto

**Certificate of Service:** Filed with the Clerk for the United States Distric Court for the Distric of Nevada via email (lv_public_docketing@nvd.uscourts.gov) and sent to Adam Honey, Deputy Attorney General at AAHoney@ag.nv.gov on August 07, 2025.